Jacqueline SMITH, Appellant,

v.

DELMAR GARDENS OF CREVE CO-EUR, Operating LLC and Division of Employment Security, Respondents.

No. ED 98902.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 20, 2013.

John J. Ammann, Christopher M. Stuffle, St. Louis, MO, for appellant.

Bart A. Matanic, Jefferson City, MO, for respondents.

GARY M. GAERTNER, JR., Presiding Judge.

*Introduction*

Jacqueline Smith (Claimant) appeals the decision by the Labor and Industrial Relations Commission (Commission) which denied her unemployment compensation benefits after her termination by Delmar Gardens of Creve Coeur (Employer) for alleged misconduct connected with her work. We affirm.

*Background*

Claimant worked as a housekeeper for Employer, a skilled nursing facility, be-

tween November 6, 2007 and April 16, 2012. Employer's policies required Claimant to vacuum and mop every room she cleaned during her shifts, among other requirements, and to fill out and turn in checklists for every room she cleaned during every shift. At the start of her employment with Employer, Claimant underwent a three-day orientation on the floor with another housekeeper, and she was aware of all company policies.

On April 14, 2012, Claimant clocked into work at 7:00 a.m. On that day, Claimant's task was to clean 23 to 24 rooms during her shift. At approximately 8:45 a.m. on April 14, Jessica Hayes (Hayes), assistant administrator for Employer, noticed problems on the floors of some of Claimant's assigned rooms, including a cheerio, piece of Easter grass, crumbs, a tag, and dirt. At approximately 3:00 p.m., Hayes noticed that those problems still existed and questioned Claimant as to whether Claimant had cleaned all of her assigned rooms. After Claimant answered that she had, Hayes then questioned Claimant as to whether she had mopped and vacuumed her assigned rooms. Claimant did not respond or provide a reason why the floors were not clean, but instead apologized.

Hayes then walked Claimant to each of the nine rooms in question and pointed out the problems.[1] After the review with Hayes finished at approximately 3:15 p.m., Claimant asked Hayes whether she should clean the rooms, and Hayes answered that Claimant should. At approximately 3:30 p.m., Claimant interrupted a conversation between Hayes and another resident's family member and told Hayes that she had cleaned the rooms. Hayes then told Claimant to clock out for the day. After Claimant left and the conversation be-

tween Hayes and the family member finished, Hayes checked the rooms and noticed that only room 124, which initially had crumbs "all over the center of the floor," had been cleaned.

Employer terminated Claimant on April 16, 2012, because Claimant had not cleaned her entire assignment on April 14. Claimant filed her claim for unemployment benefits with the Missouri Division of Employment Security on April 16, 2012. The Deputy who considered Claimant's claim determined that Claimant was discharged for misconduct connected with work, because she did not clean a majority of her assigned rooms on April 14, 2012, and she did not complete the corrections needed as instructed by Employer. Therefore, the Deputy found that Claimant was disqualified from waiting week credit and benefits.

Claimant appealed, and the Appeals Tribunal affirmed the decision, asserting that "[C]laimant's failure to clean the rooms [after Hayes pointed them out to her] constitutes an intentional and willful disregard of a standard of behavior the employer had the right to expect." Therefore, the Appeals Tribunal found Employer had met its burden of proving that the misconduct was connected with work. On further appeal, the Commission unanimously affirmed, finding the decision of the Appeals Tribunal was supported by competent and substantial evidence. This appeal follows.

*Standard of Review*

◼︎◼︎◼︎ Our review of the Commission's decision is governed by Section 288.210,[2] which provides that the findings of the Commission as to the facts and the credibility of witnesses shall be conclusive and we shall only review questions of law. *Berwin v. Lindenwood,* 205 S.W.3d 291,

---

1. Claimant alleged that she was only shown five rooms.

2. All statutory references are to RSMo. (2000), unless otherwise indicated.

98

294 (Mo.App.E.D.2006). However, we may modify the decision by the Commission under the following circumstances:

(1) That the Commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the Commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Id.* (quoting Section 288.210). With regards to an award of unemployment benefits, the question as to whether the award is supported by competent and substantial evidence is determined by the evidence in the context of the whole record. *Quik 'N Tasty Foods, Inc. v. Div. of Employment Sec.,* 17 S.W.3d 620, 623–624 (Mo.App. W.D.2000). "The determination of whether an employee is discharged for misconduct connected with work is a question of law that we review de novo." *Williams v. Enterprise Rent–A–Car Shared Servs., LLC,* 297 S.W.3d 139, 142 (Mo.App.E.D. 2009) (citing *RPCS, Inc. v. Waters,* 190 S.W.3d 580, 586 (Mo.App.S.D.2006)).

### Discussion

In her sole point on appeal, Claimant argues that the Commission erred in determining that Claimant was terminated from employment due to misconduct connected with her work. She argues that the alleged misconduct consisted only of poor workmanship, which does not rise to the level of statutory misconduct necessary to deny unemployment compensation benefits. Claimant argues, therefore, that the Commission erred in finding that there was sufficient competent evidence to conclude she was terminated for statutory misconduct. We disagree.

■ Generally, a claimant seeking unemployment benefits has the burden of showing that she is entitled to them. *Croy v. Div. of Employment Sec.,* 187 S.W.3d 888, 892 (Mo.App.S.D.2006). However, when the employer claims that benefits should be denied because of termination based on statutory misconduct, the burden of proof shifts to the employer. *Id.* The employer must then show by a preponderance of evidence that the alleged misconduct was connected with the work, and that the "claimant willfully violated" the rules or standards of the employer. *Id.*

■ The state of Missouri defines "misconduct" as follows:

An act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such a degree of recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030(23), RSMo. (Supp.2012). Thus, the act of an employee deliberately disregarding an employer's reasonable directive can constitute misconduct, and would allow a claimant to be denied unemployment compensation benefits. *Dixon v. Stoam Indus., Inc.,* 216 S.W.3d 688, 693 (Mo.App.S.D.2007). "A single instance of intentional disobedience of an employer's directive can constitute misconduct." *Finner v. Americold Logistics, LLC,* 298 S.W.3d 580, 584 (Mo.App.S.D.2009).

■ Here, in determining that there was competent and substantial evidence to find misconduct, the Commission agreed with the Appeals Tribunal's finding that "[Hayes'] testimony [regarding April 14, 2012] was clearer and more specific than that of [C]laimant, and therefore was more

likely to accurately reflect the actual circumstances." The Commission thus accepted Employer's testimony that Hayes showed Claimant all nine rooms and Claimant did not clean them. We defer to this finding, because it was supported by competent and substantial evidence. *See Berwin*, 205 S.W.3d at 294. Our question now is whether this factual finding leads to the conclusion that Claimant's conduct amounted to the statutory definition of misconduct. Claimant's point on appeal is that this testimony provides evidence of only poor workmanship rather than intentional disregard.

■ Claimant correctly points out that "whether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation." *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 899 (Mo.App.E.D.2008) (quoting *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 124 (Mo.App.W.D.1999)). As this Court found in *Frisella*, "there is a vast distinction between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him or her for unemployment compensation benefits."[3] *Id.* (quoting *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App.W.D.2005)). Claimant contends that her infractions do not meet the higher standard for misconduct, only poor workmanship.

Claimant relies on *Duncan v. Accent Marketing, LLC* to address the differences between misconduct and poor workmanship. 328 S.W.3d 488 (Mo.App.E.D.2010).

*Duncan* states that "[a]n employee's failure to follow an employer's instructions is not necessarily grounds for finding misconduct." *Id.* at 492. Rather, "[a]bsent evidence that [the c]laimant deliberately or purposefully committed the mistakes, he cannot be found to have committed an act of misconduct." *Id.* Similarly here, Claimant argues that the minor infractions in each room alone, which form the basis of the Employer's misconduct claim, were not deliberate and are more accurately simply poor workmanship and not misconduct.

In *Duncan*, however, the circumstances were different from those in the current case in that the employer in *Duncan* instructed the claimant to follow the general employment policies, of which the claimant was already aware. *Id.* Here, while Claimant apparently did fail to follow Employer's general policies by not thoroughly vacuuming and mopping the floors, her deficient performance did not end there. In contrast to the general instructions given in *Duncan*, Employer specifically instructed Claimant here to re-clean the nine rooms in question. Fifteen minutes later, Claimant informed Hayes that Claimant had re-cleaned the rooms, and she clocked out thereafter. Employer checked the nine rooms and, with the exception of the one room that had been cleaned, Employer maintains that Claimant falsely represented that she re-cleaned the other eight rooms.

Employer's instructions here were more akin to those in *Dixon v. Stoam Industries, Inc.*, 216 S.W.3d 688. In *Dixon*, the claimant was assisting a co-worker in manufacturing wall panels when his supervisor asked the claimant to work on something

---

**3.** We emphasize that the law does not restrict unemployment compensation benefits to only employees who suffered no-fault termination, i.e. mass layoffs. Rather, there is room in the statute for compensation for those who have been terminated because of poor judgment or poor performance so as to not punish workers who are terminated because they are unable to do the job according to their employer's standards.

else. *Id.* at 691. Instead of complying, the claimant stated that he "wasn't going to stop what [he] was doing and go over there and do that the rest of the night." *Id.* The employer fired the claimant on the spot. *Id.* The court found, "[I]n every contract of employment[,] it is implied that the employee will obey the law and reasonable rules, orders and instructions of the employer[.]" *Id.* at 693 (quoting *Superior Gearbox Co. v. Edwards,* 869 S.W.2d 239, 244 (Mo.App.1993)). The testimony in *Dixon* showed that the task the employer asked the claimant to perform was "within the scope of [the] claimant's employment." *Id.* The court found that, under such circumstances, "an employee's refusal to comply with a lawful and reasonable directive from a supervisor constitutes misconduct as that term is defined by Section 288.030.1(24)." *Id.*

As in *Dixon,* it was reasonable for Employer here to request that Claimant clean any areas that Employer found to be inadequately cleaned. Therefore, Claimant's one instance of inaction regarding that reasonable instruction constituted statutory misconduct. *Finner,* 298 S.W.3d at 584. Though the initial infractions were extremely minor in nature and on their own would have at most constituted poor workmanship in and of themselves, the fact that the Commission found they were not corrected after Hayes' specific and reasonable request was the determining element in finding misconduct. *See Duncan,* 328 S.W.3d at 492.

In sum, the Commission chose to believe that Employer's testimony was more credible and that, despite Claimant's denial of the fact, Hayes showed Claimant all nine rooms in question and Claimant re-cleaned only one of them. This finding is supported by sufficient competent evidence on the whole record, thus we are bound to consider only the facts the Commission found most credible, even if the record could have supported the opposite finding. *See Berwin,* 205 S.W.3d at 294. Because one instance of misconduct is sufficient to warrant a denial of benefits, and Claimant here, according to the facts found by the Commission, refused to comply with the corrective instructions given to her by Employer, the Commission's decision to deny benefits is consistent with Missouri Employment Security Law. *See Finner,* 298 S.W.3d at 584. Point denied.

### Conclusion

We affirm the decision of the Commission.

ANGELA T. QUIGLESS, J.,
MICHAEL W. NOBLE, S.J., concur.