Michael SCHILB, Appellant,

v.

**DUKE MANUFACTURING COMPANY and Division of Employment Security, Respondents.**

No. WD 72637.

Missouri Court of Appeals, Western District.

April 5, 2011.

Blake I. Markus, Jefferson City, MO, for Appellant.

Shelly A. Kintzel, Jefferson City, MO, for Respondent, Div. of Employment Security.

Whitney D. Pile, St. Louis, MO, for Respondent, Duke Manufacturing.

Before: MARK D. PFEIFFER, P.J., THOMAS H. NEWTON, and ALOK AHUJA, JJ.

THOMAS H. NEWTON, Judge.

Mr. Michael Schilb appeals the denial of his application for unemployment benefits. The Labor and Industrial Relations Commission (Commission) determined that Mr. Schilb was not entitled to benefits because he was discharged for misconduct connected with work. The Commission determined that he was discharged for misconduct connected with work because Mr. Schilb was negligent on the job twice within four months. We reverse.

**Factual and Procedural Background**

Mr. Schilb worked as a warehouse lead for Duke Manufacturing Company (Duke). His employment with Duke began on October 25, 2004, and terminated on December 21, 2009. Mr. Schilb filed a request for unemployment benefits with the Missouri Division of Employment Security (Division), and Duke contested his request. Duke stated that Mr. Schilb was terminated because he violated a "known and reasonable company rule" concerning safety. A deputy in the Division denied Mr. Schilb unemployment benefits because he was discharged for misconduct connected with work. The deputy found that Mr. Schilb violated Duke's safety policy by shoving an object; causing injury to a coworker's elbow. Mr. Schilb appealed that decision to the Appeals Tribunal of the Division.

The Appeals Tribunal heard the following evidence during a telephone hearing. Duke is a company that builds equipment for the food service industry. On December 18, 2009, Mr. Schilb was operating a forklift to deliver cardboard to another section of the warehouse when he stopped to move two containers from his path. A diagram of the area, admitted into evi-

dence, depicted a wide aisle separating a production line with racks and other objects composing its sides. Mr. Neil Wilhelm, the human resource manager, testified that Mr. Schilb shoved one of those containers—a tote—across the warehouse aisle with such force that it traveled five feet and clashed with a rolling rack. The rolling rack had parts shelved on it, and one of the parts hit an employee, Ms. Debbie Rios.

After an investigation, Mr. Wilhelm determined Mr. Schilb's actions violated Plant Rule # 24, which requires employees "to observe established Fire, Safety, Civil Defense Rules or common safety practices." Mr. Schilb was discharged because Mr. Wilhelm found Mr. Schilb to be negligent for failing to exercise due care in pushing a tote that was three feet long, two feet wide, and two feet high and contained parts, thereby endangering others. Mr. Wilhelm also testified that Mr. Schilb had been disciplined in August for failing to adhere to the same rule, which had caused property damage.

Ms. Rios testified that she was standing behind the rolling rack with her arm resting on one of the shelves, waiting for Mr. Schilb to pass. She saw Mr. Schilb shove a tote farther to the left, out of the aisle, and shove another tote farther to the right, out of the aisle, causing the latter to travel five feet and clash with the metal rolling rack where her arm rested. She further testified that the impact moved the rack into her and caused one of the parts to contact her elbow, resulting in some pain. Ms. Rios claimed that she did not visit the nurse or otherwise receive any medical attention. She also testified that workers were traveling across the aisle to work on the production line and she did not know if Mr. Schilb could see her standing behind the rolling rack. Ms. Rios's supervisor, Mr. Bobby Brown, testified

that he heard the tote impact with the rolling rack from about thirty feet away.

Mr. Schilb testified that he pushed the totes, rather than shoved them, further to the left and the right out of the aisle, and that after he released the tote on the right, it surprisingly continued to move and bumped the rolling rack. He also testified that he looked before he moved the totes because the sides of the aisle were full and he had to decide where to move them. He further testified that he was in a hurry to deliver products at his supervisor's request and that the aisle was designated for forklift trafficking.

The Appeals Tribunal found that Mr. Schilb moved the tote farther to the right of the aisle rather than across it, because it prevented him from proceeding forward. Mr. Schilb shoved, rather than pushed, the tote with sufficient force that it slid five feet and hit the rack, and in doing so, he failed to observe common safety practices. The impact caused Ms. Rios, who was resting her arm on the rack, to sustain a nonserious injury from one of the parts on the rack hitting her elbow. Mr. Schilb knew that Duke had a safety rule requiring workers to exercise common safety precautions and had been previously warned about this rule after "an accident with his forklift that resulted in damage to the employer's products." Based on these findings, the Appeals Tribunal affirmed the deputy's decision. It concluded that the incident supporting discharge was not an isolated instance of negligence because of the previous incident in August violating the same rule and, thus, "met the definition of misconduct." The Commission affirmed and adopted the Appeals Tribunal's decision. Mr. Schilb appeals.

### Standard of Review

In reviewing the Commission's decision, we will modify or reverse only if

we find "(1) [t]hat the commission acted without or in excess of its powers; (2) [t]hat the decision was procured by fraud; (3) [t]hat the facts found by the commission do not support the award; or (4) [t]hat there was no sufficient competent evidence in the record to warrant the making of the award." § 288.210 RSMo 2000; *see also Wieland v. St. Anthony's Med. Ctr.,* 294 S.W.3d 77, 78–79 (Mo.App. E.D. 2009). The Commission's findings are conclusive if, absent fraud, they are supported by competent and substantial evidence. *Wieland,* 294 S.W.3d at 79. In our review, we do not defer to the Commission's conclusions of law or its application of the law to the facts. *Wieland,* 294 S.W.3d at 79. In particular, whether the facts found by the Commission support a finding of misconduct is a legal issue, which we review *de novo. Wright v. Casey's Mktg. Co.,* 326 S.W.3d 884, 887 (Mo.App. W.D.2010); *Johnson v. Div. of Emp't Sec.,* 318 S.W.3d 797, 799 (Mo.App. W.D.2010).

## Legal Analysis

 Mr. Schilb argues that the Commission erred in finding that he was discharged for misconduct connected with work after finding that the incident supporting discharge was a negligent act. Alternatively, he argues that the Commission erred because the incident for which he was discharged combined with the previous incident in August did not satisfy the law requiring that negligence be "in such a degree or recurrence as to manifest culpability, wrongful intent, or evil design." A claimant may be denied benefits if discharged for misconduct connected with work. *Finner v. Americold Logistics, LLC,* 298 S.W.3d 580, 583 (Mo.App. S.D. 2009). Whether a claimant was discharged for misconduct connected with work is a question of law. *Id.* at 584.

 Section 288.030.1(23) defines misconduct as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

A violation of an employer's rule may justify termination, but it does not necessarily support a finding of misconduct. *Wieland,* 294 S.W.3d at 79 ("[T]here is a distinction between the violation of an employer's rule justifying the employee's discharge and the violation of an employer's rule warranting a finding of misconduct connected to the employee's work."). The employer has the burden of proving by substantial and competent evidence that the claimant was discharged for misconduct. *Dobberstein v. Charter Communications, Inc.,* 241 S.W.3d 849, 852 (Mo.App. E.D.2007).

The Commission found that Mr. Schilb's conduct in shoving the tote was not an isolated incident of negligence because he had violated the same rule four months earlier, and, thus, met the "the definition of misconduct in the Employment Security Law, as explained in the *Yellow Freight* case." The Commission thus impliedly found that Mr. Schilb's two acts of negligence within four months showed negligence recurring "as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *Yellow Freight System v. Thomas,* 987 S.W.2d 1, 3 (Mo.App. W.D.1998) (internal quotation marks and citation omitted).

The statutes do not define "recurrence." Nor have cases interpreted the phrase "negligence in ... recurrence," although the Commission's finding of misconduct on this basis has been challenged on appeal. *See, e.g. Finner*, 298 S.W.3d at 584; *Peoples v. ESI Mail Pharm. Servs., Inc.*, 213 S.W.3d 710, 710–11 (Mo.App. E.D.2007); *Dobberstein*, 241 S.W.3d at 851–52. "When a court of appeals construes a statute, it does so in light of the purposes the legislature intended to accomplish and the evils it intended to cure." *In Interest of A.M.B.*, 738 S.W.2d 128, 130 (Mo.App. S.D.1987). One of the reasons the law requires a finding of misconduct connected with work before denying unemployment benefits is to protect those who are discharged through no fault of their own. *See Shelby v. Hayward Baker, Inc.*, 128 S.W.3d 164, 170 (Mo.App. S.D.2004). It may be that, depending on the facts, repeated and frequent negligence may support a finding of misconduct, even if the individual acts are different from one another, where culpability is shown. However, we need not decide that issue, because that is not this case.

Here, the first violation of Plant Rule # 24 was characterized by Duke as Mr. Schilb's failure to use "due diligence" while removing a load from the storage rack because Mr. Schilb had snagged and dragged another load off the storage rack. Mr. Schilb testified that while he was picking up a load, another load with sticky wrapping attached to his load without his knowledge, so that when he pulled his load, the other load fell. The employer did not testify that Mr. Schilb's action was anything but a mistake. To construe recurring negligence" to include a single, prior, materially different, negligent act, separated in time by four months from the employee's discharge would be contrary to the legislature's intent to protect innocent claimants. It would also be contrary to the proposition that a claimant who repeatedly violates the same rule will not be found to have engaged in misconduct absent a showing of a willful intent to violate a rule or standard. *See, e.g., Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 900–01 (Mo.App. E.D.2008) (incidents where claimant failed to adhere to employer's standards were mistakes lacking mental culpability and constituted poor job performance absent evidence of purposefully committing the mistakes); *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13–14 (Mo.App. W.D.2005) (mistakes including previous reprimands for same mistake constituted poor job performance); *Dixon v. Div. of Emp't Sec.*, 106 S.W.3d 536, 541–42 (Mo.App. W.D.2003) (transposing numbers, providing incorrect information to patients, and providing information to the wrong patients considered lack of judgment and poor work performance because of lack of culpability). Thus, combining Mr. Schilb's two incidents of "poor job performance," which were separated in time by four months, does not support a finding of culpability or a willful intent to disregard Duke's rules. The Commission erred in doing so.

The Division and Duke request that we affirm the Commission's finding of misconduct because Mr. Schilb's actions in shoving the tote and injuring a coworker constituted a "wanton and/or willful" violation of Duke's safety rules or a disregard of standards of behavior an employer has a right to expect. We defer to the Commission's finding that the incident constituted negligence because the record supports it. However, we find the incident constituted mere negligence. As a matter of law, an isolated act of simple negligence is not misconduct connected with work. *Yellow Freight*, 987 S.W.2d at 4 (finding "careless and reckless driving—striking a parked bus" was not misconduct connected with

claimant's work). Mr. Schilb's points are granted.

### Conclusion

Therefore, we reverse the Commission's decision.

PFEIFFER, P.J., and AHUJA, J. concur.