**Andrea CONNER, Appellant,**

v.

**VISITING NURSE ASSOCIATION OF SOUTHWEST MISSOURI, INC., and Missouri Division of Employment Security, Respondents.**

**Nos. SD 31875, SD 31879.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 10, 2012.

---

8. DeWitt's "Written Request for Attorneys' Fees" was a motion taken with the case on appeal. The motion is denied.

Andrea Conner, of Bernie, MO, Appellant Pro Se.

Visiting Nurse Association of Southwest Missouri, Inc., of Kennett, MO, Respondent/Employer Pro Se.

Robert A. Bedell, of Jefferson City, MO, for Respondent DES.

WILLIAM W. FRANCIS, JR., J.

Andrea Conner ("Conner"), who appears before this Court self-represented, appeals the decision of the Labor and Industrial Relations Commission ("Commission"), which found she was disqualified from receiving unemployment benefits and that she was ineligible to receive benefits during a specific period of time.[1] We affirm the Commission's decisions.

### Factual and Procedural Background

The record reveals Conner last worked for Visiting Nurse Association of Southwest Missouri, Inc. ("VNA"), on January 31, 2011, where she was a home care aide earning $8.00 per hour. She was termi-

---

1. While this matter is technically two appeals from separate decisions of the Commission, we shall address the facts and issues together in this opinion.

nated on June 22, 2011, and filed for unemployment benefits on August 17, 2011.

On September 8, 2011, VNA contacted the Division of Employment Security ("DES") in writing to alert it that VNA had "work available" for Conner, as well as the terms of the potential earning opportunity. Conner was then notified that VNA was "offering [her] work" and she phoned VNA about the position. On September 16, 2011, VNA's human resources director, Debbie Lewis ("Lewis"), spoke with Conner on the telephone about a home care aide position available at her last rate of pay. Conner advised Lewis her vehicle was under repair and Lewis suggested Conner ask a friend for transportation or utilize public transportation. Lewis told Conner the position was five days a week and Conner would only be required to go to one work location per day. Conner told Lewis she would get back with her about the position, but Lewis never heard back from Conner.

Conner contends she phoned Lewis later that same week and was unable to reach her. She related she left a simple message requesting a call-back and Lewis did not call her back. According to Conner, she was under the impression the position would require her to go to more than one location per day such that the use of public transportation would be problematic.

On September 26, 2011, VNA notified DES that it made the work offer to Conner and that it had "not heard from [Conner] regarding this offer, which [it] considers a refusal to work." As such, VNA contended it "should not be liable for [her] unemployment benefits, as work is currently available, but [Conner] has not responded to the offer made." On October 7, 2011, a DES deputy determined Conner was disqualified from receiving unemployment benefits because she "failed, without good cause, ... to apply for or accept available suitable work." Conner appealed that decision to the Appeals Tribunal ("the Tribunal") and a hearing was held on November 21, 2011. Following this hearing, at which Conner and two others testified, the Tribunal determined Conner failed to "accept work offered by this employer by whom she was formerly employed[,]" and "[s]ince the work was of the same type which [she] performed for [VNA] less than eight months earlier, it is concluded the work was suitable." The Tribunal went on to find that "[s]ince the work was at only one location and since [she] could have utilized public transportation to the work location, ... [Conner] did not have good cause to fail to accept the work and remain ... unemployed[.]" Claimant then appealed to the Commission, which affirmed and adopted the decision of the Tribunal.

■ Following the aforementioned decision, Conner stopped claiming benefits for later weeks of unemployment. After speaking to her sister, who is an attorney, Conner again began making claims for benefits. When she phoned DES, she told the representative she did not know she could claim benefit weeks after an ineligibility determination, and the representative informed her she should have continued to call in. As a result, on October 26, 2011, Conner filed a claim for benefits for the weeks from September 18, 2011, through October 22, 2011. On October 28, 2011, a deputy determined Conner was "ineligible" for benefits during those weeks because she had "not met the registration and/or reporting requirements[ ]" and specifically found that her "most recent week claimed previously was week ending [September 17, 2011.] Therefore, [Conner] did not claim benefits within 28 consecutive days following the last day of the most recent week claimed." *See* 8 C.S.R. 10–3.010(7). Conner appealed this decision to the Tribunal and a hearing was held on

November 21, 2011, at which Conner testified. Finding, pursuant to the applicable state regulations, that it was "apparent the claims were not filed within the prescribed 28 day period[,]" the Tribunal found Conner "has not established good cause for the delay since she could have timely filed the claims just as easily as she did on October 26, 2011." Conner appealed this decision to the Commission, which affirmed and adopted the decision of the Tribunal.[2] These appeals followed.

## Standard of Review

Review of the Commission's decision is governed by section 288.210.[3] *Dixon v. Stoam Indus., Inc.*, 216 S.W.3d 688, 692 (Mo.App. S.D.2007). Pursuant to section 288.210, this Court may reverse, modify, set aside or remand a decision by the Commission only on the following grounds: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. *Dixon*, 216 S.W.3d at 692. Further, we "will affirm the Commission's award 'if there is sufficient competent and substantial evidence to support the award.'" *Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 620 (Mo.App. S.D. 2007) (quoting *Peoples v. ESI Mail Pharm. Servs., Inc.*, 213 S.W.3d 710, 711 (Mo.App. E.D.2007)). The determination of "[w]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "Whether the find-

ings of the Commission support the conclusion that [the] [c]laimant's behavior constituted misconduct is a question of law that we review independently." *Murphy*, 232 S.W.3d at 620. "'We, however, must accept the Commission's judgment on the evidence and defer to the Commission on determinations regarding weight of the evidence and the credibility of witnesses.'" *Id.* (quoting *Silman v. Simmons' Grocery & Hardware, Inc.*, 204 S.W.3d 754, 755 (Mo.App. S.D.2006)).

The issues presented for our determination are:

1. Did the Commission err in determining Conner failed, without good cause, to accept suitable work such that she was disqualified from receiving unemployment benefits?

2. Did the Commission err in finding Conner was ineligible from receiving unemployment benefits from September 18, 2011, through October 22, 2011, due to her non-compliance with the 28–day requirement of 8 C.S.R. 10–3.010(7)?

## *Point I: Disqualification From Benefits*

Conner's first point relied on urges Commission error in its determination that she was disqualified from receiving unemployment benefits on the basis she failed to accept suitable work when it was offered to her by VNA. She maintains she "was not offered work by [VNA] nor did [she] deny suitable work." Further, she asserts she "did everything that an

---

2. Where, as here, the Commission adopts the findings of the Tribunal, we are necessarily called upon to examine those findings in our review of the Commission's decision. *See Li-* *ghtwine v. Republic R–III School Dist.*, 339 S.W.3d 585, 589 n. 1 (Mo.App. S.D.2011).

3. Unless otherwise stated, all statutory references are to RSMo 2000.

unemployed worker was suppose[d] to do[ ]" under section 288.040.[4]

## Analysis

Section 288.050.1(3), RSMo Cum.Supp. 2005, provides:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

. . . .

(3) That the claimant failed without good cause either to apply for available suitable work when so directed by a deputy of the [D]ivision ... or to accept suitable work when offered the claimant, either through the [D]ivision or directly by an employer by whom the individual was formerly employed....

(a) In determining whether or not any work is suitable for an individual, the [D]ivision shall consider, among other factors and in addition to those enumerated in paragraph (b) of this subdivision, the degree of risk involved to the individual's health, safety and morals, the individual's physical fitness and prior training, the individual's experience and prior earnings, the individual's length of unemployment, the individual's prospects for securing work in the individual's customary occupation, the distance of available work from the individual's residence and the individual's prospect of obtaining local work....

Here, Conner's former employer, VNA, contacted her about an employment opportunity holding essentially the same position she previously held for the same wages. The position was in the same small town and was for the same day and hour requirements as her previous position. In the event her vehicle was not readily serviceable, Connor would be able to take public transportation to the location or enlist the aid of a friend. The main difference in Conner's former position, and the offered position, was the fact that she would only be going to one location per day as opposed to traveling to several locations. While Conner contends she was not told the position would not require her to go to more than one location in a given day and that she later tried to contact Lewis about the position, we " 'defer to the Commission on determinations regarding weight of the evidence and the credibility of witnesses.' " *Murphy*, 232 S.W.3d at 620 (quoting *Silman*, 204 S.W.3d at 755). Further, although Conner seems to suggest in her brief that she did not receive notification of this position, she testified at the hearing she received information about the position and that she initiated contact with VNA regarding the position's details. In the instant matter, the position offered to Conner was certainly suitable under section 288.050.1(3), RSMo Cum.Supp. 2005, in that it was almost identical to the position from which she was terminated. The Commission did not err in determining Conner failed, without good cause, to accept suitable work so that she was dis-

---

4. Conner's appellate brief fails in innumerable ways to comply with Missouri Court Rule 84.04 (2011), and the other applicable rules of court. Further, her arguments are not persuasive or appropriate such that she cannot conceivably prevail on appeal. While we acknowledge these deficiencies, we are able to sufficiently discern her allegations of error without impeding disposition on the merits. *See DeLong Plumbing Two, Inc. v. 3050 N. Kenwood LLC*, 304 S.W.3d 784, 788 (Mo.App. S.D.2010). Accordingly, we have chosen to address her appeal *ex gratia*.

qualified from receiving unemployment benefits. Point I is denied.

### Point II: Ineligibility for Benefits Due to 8 C.S.R. 10–3.010(7)[5]

#### Analysis

■ 8 C.S.R. 10–3.010(7), regarding "Registration and Claims in General," provides:

> If during a benefit year, a claimant does not file a claim for benefits, within twenty-eight (28) calendar days after the end of the last week claimed ... the claimant must file a renewed claim if the claimant has had intervening employment or a reopened claim if the claimant has not. The twenty-eight (28) calendar-day period may be extended for good cause. If good cause is not found, the claimant's claims for benefits for the period from the most recent week claimed ... through the week ending just prior to the renewing or reopening of the claim shall not constitute valid claims for benefits[.]

Here, Conner's last day of work with VNA was on January 31, 2011, and she was officially terminated from its employ on June 22, 2011. She claimed and received waiting-week benefits for the weeks of August 14, 2011, through September 17, 2011. When it was determined she was disqualified from receiving benefits, she stopped making claims. Conner then again filed for benefits on October 26, 2011, which was more than 28 days after September 17,

2001, the last week she claimed. Conner's excuse that she did not know she could continue filing her claims after she received her notice of disqualification is not good cause as to why she failed to timely file her weekly claims. The Commission did not err in finding she was ineligible for benefits from September 18, 2011, through October 22, 2011, due to her non-compliance with the 28–day requirement of 8 C.S.R. 10–3.010(7). Point II is denied.

The Orders of the Commission are affirmed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., Concur.

---

5. As stated above, this opinion deals with two appeals from two different decisions of the Commission, which have been consolidated into this singular opinion. Conner's second appeal is directed at the Commission's separate order relating to the denial of her request for certain waiting-week benefits. As such, while we would typically decline to address any further issues after having made the determination that Conner was properly disqualified from receiving any type of unemployment benefits, as this is a completely separate appeal, we are called upon to, nevertheless, analyze the issue. Further, although not specifically set out in Conner's brief as a second point relied on, the Division responded to this issue as such. Keeping in mind the already mentioned gross deficiencies in Conner's brief, for ease of analysis, we shall follow the Division's lead and address this second issue.